UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
DARRYL SUMMERVILLE,

                    Petitioner,

        - against -

JAMES CONWAY, Superintendent,

                    Respondent.
---------------------------------------------------------- X

**MEMORANDUM**
**DECISION AND ORDER**

07 Civ. 4830 (BMC)(RML)

**COGAN, District Judge.**

This case is before the Court on the petition for habeas corpus relief under 28 U.S.C. § 2254. As part of a turf dispute between drug gangs, petitioner tried to shoot two rivals, Clarida and Herne, successfully injured Herne, and one of his bullets killed an elderly pedestrian, Mrs. Logan, who was on her way home from church. He was convicted by a jury of Murder in the Second Degree (N.Y. Penal Law §125.25[2] (depraved indifference)); Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law §265.03[3]); Reckless Endangerment in the First Degree (N.Y. Penal Law §120.25); and Assault in the Second Degree (N.Y. Penal Law §120.05[2]). As a second felony offender, he received concurrent terms of 25 years to life on the murder conviction, 3 ½ to 7 years on the reckless endangerment conviction, 15 years on the weapons possession charge and 5 years on the assault conviction.

Additional facts are set forth below as relevant to each of petitioner's claims of error.

**I. Suppression of Pre-trial Statements**

Upon his arrest in North Carolina on unrelated charges, petitioner made incriminating statements about the instant crime to the North Carolina police officer who arrested him. When

New York City detectives came to North Carolina to take him back to New York, he made other incriminating statements to them. All of the statements were made prior to advising petitioner of his Miranda rights. Pursuant to petitioner's pre-trial motions, the trial court suppressed some of these statements, but admitted others. The Appellate Division affirmed this together with other rulings, holding that these issues were collectively unpreserved or without merit. This is deemed an adjudication on the merits, see Jimenez v. Walker, 458 F.3d 130 (2d Cir. 2006), warranting deferential review under Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000).

The statements to the North Carolina police officer fell into several categories. The first was when petitioner gave two false names in response to the Officer asking his name. Pedigree questions ordinarily do not require advice as to Miranda rights. Pennsylvania v. Muniz, 496 U.S. 582, 601-02, 110 S.Ct. 2638, 2650-2651 (1990); Rosa v. McCray, 396 F.3d 210, 221 (2d Cir. 2005) ("The collection of biographical or pedigree information through a law enforcement officer's questions during the non-investigative booking process that typically follows a suspect's arrest ... does not ordinarily implicate the prophylactic protections of Miranda ...."). Another statement was made by petitioner to other detainees, not in response to any questioning at all, and was simply overheard by the Officer. Finally, petitioner asked the North Carolina police officer who was coming to get him from New York, and when the Officer replied with no more than the name of the New York City detective, petitioner chose to make other admissions. None of petitioner's statements were the product of custodial interrogation nor triggered by police conduct, and thus did not require prior delivery of Miranda warnings. See Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682 (1980); Lineberger v. Conway, No. 03 Civ. 1645, 2008 WL 513203, *6 (S.D.N.Y. Feb. 26, 2008) ("[S]pontaneous statements which are not the result of 'official interrogation' have never been subject to [Miranda's] strictures," quoting Wolfrath v. La

Vallee, 576 F.2d 965, 973 n.6 (2d Cir.1978)). The admission to the New York City detectives who came to retrieve petitioner was similarly admissible; the record of the hearing is clear that they had no more than the opportunity to tell petitioner their names when he started talking and made his admissions before they could get a word in edgewise.

The Appellate Division's decision was thus neither contrary to nor an unreasonable application of Supreme Court authority.

## II. Trial Evidentiary Rulings

### A. Confrontation Clause Claim[1]

During the direct examination of the arresting Detective, the prosecutor asked whether he had interviewed "various individuals" during the investigation, and the Detective answered affirmatively. The prosecutor then asked whether a time came when the Detective had a suspect of his investigation. The Detective answered that there was, on April 10th. The prosecutor then asked if the Detective had interviewed one Darnell Smith. The Detective said that he had interviewed Smith on April 10th because he was the 911 caller after the shooting. Smith, who lived near the scene of the crime, testified at trial that he had heard the shots, called 911, and had seen petitioner carrying a gun and moving on foot away from the scene.

Based on these facts, petitioner contends that his rights under the Confrontation Clause were violated by the "implied hearsay" in the Detective's testimony. Petitioner contends that although the Detective did not relate what he had been told by "various individuals," the fact that he concluded on the same date he spoke to those individuals that petitioner was a suspect

---

[1] Petitioner refers to this as a "hearsay" objection although he cites Bruton v. United States, 391 U.S. 123, 128, 88 S.Ct. 1620, 1624 (1968), and Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354 (2005). Mere evidentiary errors generally do not constitute grounds for federal habeas relief, Dowling v. United States, 493 U.S. 342, 352, 110 S.Ct. 668, 674 (1990), and I will therefore construe petitioner's *pro se* submission as raising a Confrontation Clause claim.

3

constituted the introduction of out of court statements by unnamed individuals that petitioner had committed the crime. Respondent contends that the statement was only offered as background information; that it does not indicate what the "various individuals" said to the Detective; and that since Smith testified at trial, there was no Confrontation Clause violation.

Petitioner's trial counsel did not object to any of this testimony. The Appellate Division held that this claim was one of many that were "either unpreserved for appellate review or without merit." People v. Summerville, 22 A.D.3d 692, 802 N.Y.S.2d 508 (2d Dep't 2005). Notwithstanding the failure to object at trial, this holding requires deferential review on the merits because there is no express reliance on a procedural bar. See Jimenez v. Walker, 458 F.3d at 146.

In Ryan v. Miller, 303 F.3d 231 (2d Cir. 2002), the Second Circuit recognized that the admission of an implied out of court statement may constitute an unreasonable application of Bruton v. United States, 391 U.S. 123, 128, 88 S.Ct. 1620, 1624 (1968). No doubt, such a statement, if testimonial, could also fall within the prohibition of Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354 (2005), which was decided subsequent to Ryan. However, the Detective's statements in the instant case are a far cry from Ryan, which involved a deliberate and successful prosecutorial effort, through artful questioning, to evade numerous prior rulings in state and federal courts in the same case that had previously held inadmissible the coerced confession of a co-conspirator.

Here, in contrast, there is nothing implicit in the Detective's statement about the specifics of what was said to him, except that cumulatively, it led the Detective to conclude that petitioner was a suspect, and there was nothing the prosecutor was trying to evade except the prohibition against hearsay. The Detective's reference to "various people" does not mean that anyone in

particular accused petitioner; detectives assemble information from a variety of sources in deciding whom to identify as a suspect. His conclusion was merely background to show that the police had identified petitioner as a suspect promptly after the shooting, even though they did not arrest him for nearly two months after. As the Court held in Buenos Ruiz v. Fischer, No. 06 Civ. 0301, 2007 WL 1395462, *3 (E.D.N.Y. May 10, 2007), where the implication of the out of court statement was far more apparent than in this case:

> Here, the evidence was admitted to explain how the investigation of the Petitioner progressed and to explain the lapse of time between the commission of the crime and the apprehension of Petitioner. Any prejudice resulting from an implication that Balenzuela had inculpated Petitioner by giving Detective Martinez a photograph of Petitioner was minimal, if at all.

See also Smith v. Walsh, No. 00 Civ. 5672, 2003 WL 22670885, *6 (E.D.N.Y. Oct. 20, 2003) ("The people [are] not required to force the jury to speculate how it came to pass that the officer apprehended [the defendant]."). The instant case thus falls squarely within the "background" category recognized in Ryan, 301 F.3d at 252-53.

If any out of court statement could be inferred from the Detective's testimony, it is that Smith implicated petitioner when the Detective spoke to him on April 10th. But Smith testified at trial, and thus there is no Confrontation Clause issue as to him. The Appellate Division did not unreasonably apply Bruton or Crawford in rejecting this claim.

### B. Statement Implying Drug Dealing

It had to come out at trial that this shooting resulted from a dispute between rival drug gangs; otherwise, the jury would have been left to speculate about why the shooting occurred. There was plenty of evidence about that, and petitioner is not complaining about the admission of that evidence. Instead, he appears to complain that one particular statement was insufficient to prove that he was in fact involved in the drug trade. He focuses on the testimony of Clarida,

who, when asked if petitioner's gang sold drugs, said "yeah, I believe so." Petitioner's argument appears to be that since the statement does not prove he dealt drugs, it should not have been admitted. There was no objection at trial. The Appellate Division rejected this claim as one of those "either unpreserved for appellate review or without merit," Summerville, 22 A.D.3d 692, 802 N.Y.S.2d 508 (2d Dep't 2005), thus again warranting deferential review here.

There is no meritorious habeas corpus claim presented. The Supreme Court has never held that the admission of evidence of prior bad acts can ever violate due process under the Fourteenth Amendment. See Estelle v. McGuire, 502 U.S. 62, 75 n. 5, 112 S.Ct. 475, 484 (1991) ("[b]ecause we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of "prior crimes" evidence to show propensity to commit a charged crime"). Petitioner cited no Supreme Court authority in the state courts or here, although he inserted the boilerplate constitutional citation in his point heading. He did cite to United States v. Jean-Baptiste, 166 F.3d 102, 107-09 (2d Cir. 1999), which, aside from being as factually inapposite as it could be, was an evidentiary decision mentioning constitutional considerations only as part of its harmless error analysis upon its determination that evidence was improperly admitted under the Federal Rules of Evidence.

Although some evidentiary errors can result in a due process deprivation, this one does not come close. Federal courts may issue a writ of habeas corpus based upon a state evidentiary error only if the petitioner demonstrates that the alleged error violated an identifiable constitutional right and that the error was "'so extremely unfair that its admission violates fundamental conceptions of justice.'" Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir.1998) (quoting Dowling v. United States, 493 U.S. 342, 352, 110 S.Ct. 668, 674 (1990)). A habeas petitioner "'bears a heavy burden because evidentiary errors generally do not rise to

6

constitutional magnitude.'" Sierra v. Burge, No. 06 Civ. 14432, 2007 WL 4218926, *5 (S.D.N.Y. Nov. 30, 2007) (quoting Copes v. Shriver, No. 97 Civ. 2284, 1997 WL 659096, *3 (S.D.N.Y. Oct. 22, 1997)).

Petitioner did not challenge in state court and does not challenge here the admissibility of the evidence provided by Clarida that: (a) the leader of petitioner's gang and eight others, including petitioner, approached and confronted Clarida and his associate, Herne, on the porch of a house; (b) an argument ensued between the two groups over who would have the right to sell drugs on a particular street corner; and (c) petitioner raised his arm with a gun in his hand and aimed it at Clarida, which was followed by three shots, missing Clarida but hitting Herne and Mrs. Logan. Petitioner also does not dispute the police officers' testimony that they found crack cocaine at the scene.

In light of this evidence, it is not even clear that petitioner's argument can be classified as attacking evidence of an "uncharged crime." All of the evidence of drugs – including the relatively innocuous testimony of Clarida that he believed that petitioner's group sold drugs, which, again, is the only evidence of "uncharged crimes" that petitioner is challenging – was offered only to explain why the shooting took place, not that any specific criminal offense had occurred.

In any event, the challenged piece of Clarida's testimony had little probative value and even less prejudicial impact. The jury already knew the details of the argument over which group would have the right to sell drugs on the disputed street corner. The Appellate Division's rejection of the claim was neither contrary to nor an unreasonable application of any Supreme Court authority.

7

## C. FBI Fingerprint Reference

During her opening statement, the prosecutor, describing how petitioner came to be arrested, noted that he initially gave two false names to the police, and that only by running an FBI check on his fingerprints did the police learn petitioner's true identity. The testimony of a police officer confirmed this fact. The contents of the FBI record, other than giving the police petitioner's name, were not disclosed. Petitioner nevertheless contends that the opening statement's reference and the testimony improperly disclosed to the jury that he had a past criminal record. There was no objection to either the opening statement or the testimony at trial. It is another one of the claims of which the Appellate Division disposed as "either unpreserved for appellate review or without merit," Summerville, 22 A.D.3d 692, 802 N.Y.S.2d 508 (2d Dep't 2005), which this Court again must review on the merits, see Jimenez, under the deferential Williams standard.

The Appellate Division's decision was not contrary to nor an unreasonable application of any Supreme Court authority. First, it does not automatically follow that anyone in the FBI's fingerprint database has a criminal record; the database includes many current or former federal employees, contractors, and law-abiding citizens. See Garcia v. Smith, No. 03 Civ. 6220, 2005 WL 3184276, *3 (E.D.N.Y. Nov. 29, 2005) ("while this evidence inevitably permitted such an inference, the finding [by the Appellate Division] that it did not compel such an inference was not unreasonable as many persons with no criminal history, i.e., judges and law enforcement personnel, have their fingerprints on file with the FBI or other law enforcement agen[cies]"). Second, even if a criminal record of some unspecified type was one inference that might be drawn, there is no Supreme Court authority that would even arguably preclude such evidence. See Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475 (1991).

## III. Legal Insufficiency

Petitioner contends that the evidence was insufficient to show "depraved indifference to human life" under New York law. His argument is that he was trying to shoot Clarida and Herne, and had no intention of shooting Mrs. Logan, the innocent bystander. He asserts that unlike someone shooting into a crowd of people, he could not have reasonably expected that his bullet would miss his targets and hit Mrs. Logan half a block away, since Clarida and Herne were only a few feet from him. He argues that there was no evidence that there were any people around when he tried to kill his competitors (besides Mrs. Logan, obviously), although the record does suggest that the area was residential and that there were bystanders present when the police arrived.

I assume that this claim is being presented to me as an alleged due process violation because that is all that my habeas jurisdiction will allow me to consider. However, it was not presented that way to the Appellate Division; it was presented as a question of state statutory interpretation. For that reason, I find that it is not exhausted.

Putting aside, for the moment, that this claim was never made to the trial court at all (appellate counsel so conceded on appeal but asked for its consideration based on "the interests of justice"), there is nothing involving the federal constitution inherent in the claim. It is a question of New York statutory interpretation. Either the New York definition of "depraved indifference" applies to these facts or it does not; either way, no federal constitutional provision is implicated.

Of course, the mere fact that the assertion of this argument as a federal constitutional claim has no merit does not mean that petitioner failed to make the argument to the state courts anyway. Here, however, I do not believe that he did. There was no mention of due process of

9

law in his brief, or even any arguably analogous term such as fundamental fairness. The argument was wholly based on parsing New York authority defining depraved indifference. Petitioner relied principally on People v. Leonardo, 89 A.D.2d 214, 455 N.Y.S.2d 434 (4th Dep't 1982), aff'd on opinion below, 60 N.Y.2d 683, 468 N.Y.S.2d 466 (1983), where someone shooting at a tree without knowing that there was someone in a field behind the tree was held insufficient for depraved indifference, while the District Attorney relied on numerous cases like People v. Trangler, 87 N.Y.2d 55, 637 N.Y.S.2d 352 (1955), which held that shooting at a person (rather than a tree) constituted depraved indifference even if the shooter missed.

Indeed, there were no federal cases cited let alone discussed in petitioner's brief to the Appellate Division. None of the state court cases cited or discussed mentioned the issue of constitutional due process or used the familiar language of federal constitutional analysis. And the point of statutory construction that he did raise has no overlap with federal constitutional litigation. Thus, none of the criteria for fairly presenting a federal constitutional claim to the state court in the absence of express invocation, as explained in Daye v. Attorney General of State of N.Y., 696 F.2d 186, 194 (2d Cir. 1982), were met.

The only basis upon which one could find that petitioner's appellate counsel had fairly presented this argument as a federal constitutional claim was through his point heading, which stated at follows:

> THE PEOPLE FAILED TO PROVE BY LEGALLY SUFFICIENT EVIDENCE
> THAT APPELLANT ACTED UNDER CIRCUMSTANCES EVINCING A
> DEPRAVED INDIFFFERENCE TO HUMAN LIFE WHEN HE FIRED HIS
> GUN DIRECTLY AT HIS INTENDED VICTIMS BUT HIT A WOMAN HALF
> BLOCK AWAY WHEN THERE WAS NO ONE ELSE IN THE IMMEDIATE
> VICINITY WHEN SHE WAS STRUCK. U.S. CONST., AMEND. XIV; N.Y.
> CONST., ART. 1, §6; P.L. §125.02.

10

I do not think this is sufficient to "fairly present" the claim in light of anything in the argument that followed even arguably connecting it to the constitutional citation in the point heading.

Even though Daye stated in dictum that where a petitioner has "cited the state courts to the specific provision of the Constitution relied on in his habeas petition, he will have fairly presented his legal basis to the state courts," Daye, 696 F.2d at 192,[2] the holdings of subsequent Second Circuit authority suggests that more is required than a disconnected point heading reference that is a non-sequitur to the rest of the brief.

In Reid v. Senkowski, 961 F.2d 374, 376-377 (2d Cir. 1992), the Court found exhaustion based on a similar reference in a point heading, but there was a significant difference there – the petitioner's "Statement of the Issue" in his brief was "[w]hether appellant's right to due process of law was violated by the trial court's refusal to provide a missing witness jury charge." That is quite thin, but at least it poses the question the way it would be posed if one were to urge a federal constitutional argument. Several district court cases that have found exhaustion by point heading citation have also noted the invocation of the phrase "due process of law" in addition to the boilerplate constitutional citation either in the point heading, the statement of the issue, or the argument. See Reese v. Greiner, No. 97 Civ. 5622, 2003 WL 21459577, *3 (S.D.N.Y. June 23, 2003); Sutton v. Herbert, 39 F. Supp.2d 335, 338 (S.D.N.Y. 1999). Nothing like that appears here.

The extreme edge of exhaustion by point heading citation that the Second Circuit will tolerate is probably set forth in Gonzalez v. Sullivan, 934 F.2d 419 (2d Cir. 1991). There, the point heading, which was the sole contender for meeting the exhaustion requirement, stated:

---

[2] The statement was dictum because, in fact, there was no such citation in Daye.

11

> THE PROSECUTOR'S SUMMATION, WHICH WAS OVERWHELMINGLY
> VENGEFUL IN TONE, CONTAINING APPEALS TO THE COMMUNITY'S
> SENSE OF OUTRAGE AT CRIME, ATTACKS ON APPELLANT'S
> CHARACTER AND ON DEFENSE COUNSEL'S ROLE AS AN ADVOCATE,
> AND OTHER IMPROPRIETIES, DEPRIVED APPELLANT OF A FAIR
> TRIAL. U.S. CONST., AMEND XIV, N.Y. CONST. ART. 1, §6.

Id. at 423. In finding exhaustion by the slimmest of margins, the Second Circuit noted:

> Although we think this complies with the above-quoted language in Daye, it is troubling that petitioner failed to support his allusion to the 14th Amendment with citations to any federal authority. Recognizing that the goal of requiring the exhaustion of state remedies is "simply to ensure that the federal courts not intrude upon state proceedings unless and until the state courts have been given a fair opportunity to consider and act upon the claims on which the habeas petition is based," Twitty v. Smith, 614 F.2d 325, 331 (2d Cir. 1979), it is plain that a state court must first have been given appropriate warning as to the federal nature of the claim before a federal court will consider it.
>
> Further, to allow a petitioner to exhaust his remedies merely by alluding to the federal constitution, without providing the state court at least a minimal argument on its application, undercuts this policy. In the instant case Gonzalez called attention to a notion of rights the sweep of which is wide-ranging. Rather than producing citations to federal cases, his brief was directed solely to state law principles. Petitioner was represented by counsel; and under our adversary system, the minimal burden of supplying at least one federal case and fashioning a legal argument directed particularly to federal constitutional principles should fall on the petitioner, not the state courts.

Id. Nevertheless, the Court held that because the petitioner had "arguably" exhausted his claim, it would consider the claim on the merits.

As threadbare as the attempt at exhaustion was in Gonzalez, the point heading at issue here requires far more effort, which will in any event be unsuccessful, to try to understand what petitioner meant to say by citing to the Constitution. First, there is no reference in the instant case to "fair trial" or, as in Reid, "due process of law," terms which, in conjunction with a point heading citation to the Fourteenth Amendment, at least arguably alert the state courts to a familiar framework for federal constitutional analysis. Second, the point heading in Gonzalez, in addition to citing specific instances of what was characterized as extreme prosecutorial excesses,

12

combined those with "other improprieties" in the summation which it then totaled to arrive at its conclusion of the deprivation of a fair trial. This concept of cumulative error in a prosecutor's summation which collectively constitutes a due process violation is also a familiar concept in constitutional challenges to criminal convictions. See Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990). Third, the point heading citation in Gonzalez was exclusively to both the Fourteenth Amendment and its counterpart under the state constitution; there was no citation or invocation of anything other than these due process provisions upon which the argument might have been based. This is significant by comparison to the instant case because not only did the point heading here contain the *pro forma* constitutional citation, but it also cited to Penal Law §125.02 – and it was the construction of the phrase "depraved indifference to human life" in that statute that comprised the entirety of the argument.

There is simply no way to reasonably evaluate petitioner's argument to the Appellate Division and come away with anything other than that petitioner was arguing what the New York Legislature intended by using the phrase "depraved indifference to human life." There is no contention at all that, if the District Attorney's construction of the statute prevailed, the construction would violate the federal or state constitution. I see no reason why the Appellate Division would have given even a passing thought to the federal constitution when it reviewed petitioner's state statutory argument.

It might be argued that petitioner's use of the phrase "legally sufficient evidence" together with the boilerplate constitutional citation in the point heading is the functional equivalent of Reid's approval of the phrase "due process of law" in the Statement of the Issue plus the same boilerplate citation in its point heading. I think it is not for the reasons set forth above, plus one additional reason. This case is not one that falls under the analytical framework

of Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979), which essentially checks, albeit deferentially, the rationality of the jury. Petitioner's state law brief never accused the jury of irrationality or doing anything wrong in applying the elements of Penal Law § 125.02; in other words, he did not contend that looking at the facts, no reasonable jury could find him guilty of the elements of the state law crime and thus he was deprived of due process of law. Instead, he was arguing, in effect, for his preferred construction of the state statute, one which would hold that when shots are fired at close range and kill someone at a longer range, the New York Legislature did not intend cases to go to the jury for depraved indifference to human life. Again, that is purely a question of state statutory law.

Giving blanket recognition to a disconnected constitutional citation in a point heading as satisfying the exhaustion requirement actually undermines the primary purpose of exhaustion, which Daye itself recognized. That purpose of course is to afford comity to state court decisions by making sure that the state court had the opportunity to focus on the federal claim before a federal court will disagree with its decision on a point of federal law. See e.g., Daye, 696 F.2d at 191. If I were to determine here that there was a federal constitutional claim with merit, and therefore issue the writ, finding exhaustion based upon the point heading citation, I would have to do it based on some restated due process argument briefed before me, and not the state court, because as noted above, there is nothing in petitioner's state court brief that would have alerted the Appellate Division to any federal constitutional issue. That is precisely what the exhaustion requirement is meant to prevent. It may be offensive to comity to presume that a state court ignored a claim that was raised before it, but it is at least equally offensive to comity to reverse a conviction that was upheld by the state court based upon a federal claim that the state court was never asked to consider.

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996), passed subsequent to Daye, Reid and Gonzalez, heightens the emphasis on comity and thereby counsels against any reading of Daye that would allow a finding of exhaustion when a state court had no articulated federal constitutional argument before it. For one thing, the assertion of failure to exhaust cannot be waived by implication, but must be expressly waived. 28 U.S.C. § 2254(b)(3). In addition, the concept of deferential review, allowing issuance of the writ not simply because the state court erred in its constitutional interpretation but requiring a higher standard of misapplication of Supreme Court authority, enhances the role of state courts in adjudicating federal constitutional claims. See id. at § 2254(d).

It should also be noted that since the decision in Daye, it has become an almost invariable practice among state appellate lawyers to tack on a federal constitutional citation to virtually every point heading, whether the argument has anything to do with the U.S. Constitution or not, with the Fourteenth Amendment, because of its broad scope, a leading choice. This is undoubtedly done as a "belt and suspenders" response to Daye for the purpose of undermining any claim of failure to exhaust if the challenge to the conviction or some arguable permutation of it finds its way into federal court later. The prevalence of the practice, however, does not mean that it must be successful in every case; in fact, it may mean just the opposite, as state courts would understandably disregard a boilerplate reference that appears in every point heading, even where no argument based on the Constitution follows, and focus instead on the substance of the argument. More fundamentally, the blanket recognition of "point heading exhaustion" has led to the development of a body of federal case law considering, albeit rejecting, claims that do not come near to showing a violation of the fundamental elements of due process.

I therefore conclude that petitioner's claim is unexhausted. However, even if I found that petitioner had raised this as a federal claim in state court, it could not be considered here. The Appellate Division expressly held that the claim was procedurally barred under state law – as noted above, petitioner's appellate counsel had so conceded, recognizing that petitioner had not raised the argument at trial – and that it was also without merit. Thus, whether the claim is viewed as unexhausted but deemed procedurally barred because it could only have been raised on direct appeal under state law, see Jones v. Keane, 329 F.3d 290, 296 (2d Cir. 2003), or whether the claim is viewed as exhausted but procedurally barred by an independent and adequate state law ground, see Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990), petitioner has not attempted to make the showing necessary to overcome the procedural bar, see Bousley v. United States, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611 (1998), and it could not be made as to this claim.

Finally, even if I were to consider the claim on the merits, there is nothing that approaches a due process violation. The New York legislature and courts could validly determine to treat shooting at a person differently than shooting at a tree without implicating any of the fundamental fairness concerns inherent in the Fourteenth Amendment's due process requirement.

## IV. Constitutionality of Penal Law §125.25[2]

Based on Jones v. Keane, No. 02 Civ. 01804, 2002 WL 33985141 (S.D.N.Y. May 22, 2002), rev'd on other grounds, 329 F.3d 290 (2d Cir. 2003), petitioner contends that New York Penal Law § 125.25[2] (depraved indifference murder) is unconstitutionally vague as applied. The argument has received attention in a number of cases and goes like this: under § 125.25, there are two second degree murder theories in the statute, either intentional murder (subsection

16

1), or depraved indifference murder (subsection 2). There is a separate, less serious crime of second degree manslaughter, Penal Law § 125.15. However, the argument goes, because of language used in various New York cases, the standard for depraved indifference murder and for second degree manslaughter have become synonymous or conflated. As a result, in a case where a defendant might be guilty of either second degree murder or second degree manslaughter, prosecutors will choose to indict under §125.25[2], rather than giving the jury an easier way out under a less serious statute, even though the second degree manslaughter statute covers precisely the same conduct. This "writing out" from the law of the second degree manslaughter statute is sufficiently arbitrary, Jones held, that it denies a defendant due process and equal protection of the law.

Although Jones was reversed for failure to exhaust, the issue is pending in the Second Circuit in a case that rejected Jones. See Rustici v. Phillips, 497 F. Supp.2d 452 (E.D.N.Y. 2007). Every other case that has considered the issue, whether citing Jones or not, has rejected the constitutional challenge either on the ground that the standards of liability between the two statutes remain distinct, or that even if they are not distinct, their convergence does not amount to a constitutional violation or is neither contrary to nor an unreasonable application of Supreme Court authority. See Rustici, 497 F. Supp. at 478-82 (collecting and discussing authorities). I agree with those Courts that have found the statute constitutional for the reasons stated in these cases and therefore reject petitioner's claim.

## V. Prosecutorial Misconduct

The claimed misconduct is that during closing argument, the prosecutor argued that petitioner could be guilty of both intentional murder (Penal Law § 125.25[1]) and depraved indifference murder (Penal Law § 125.25[2]). Petitioner contends that finding him guilty of

17

intentional murder would be inconsistent with finding him guilty of depraved indifference murder, because the latter requires recklessness and one cannot recklessly intend to kill someone. His point is that the theories could have been argued in the alternative, but not as compatible, and that since there was no evidence that he intended to kill Mrs. Logan, the prosecutor unfairly prejudiced him by urging an intentional murder conviction.

Both the prosecutor in her closing and the Court in its instructions to the jury made it clear how petitioner could be guilty under both theories. Penal Law §125.25[1] on its face does not require intent to kill the victim; it applies to a defendant who "caus[es] the death of a person while either intending to cause that victim's death *or intending to cause the death of a third party.*" (Emhapsis added). As noted, this theory of transferred intent was clearly explained to the jury by both the prosecutor and the Court. Acting intentionally with regard to Herne and Clarida, i.e., trying to kill them and having that intent transferred to the death of Mrs. Logan, was not at all inconsistent with a finding that petitioner acted with reckless disregard for the life of Mrs. Logan.

But in fact, even though the prosecutor argued that the jury could convict on both subsections [1] and [2], the trial court instructed the jury that it had to choose. It did, finding petitioner guilty of reckless indifference to Mrs. Logan but rejecting the transferred intent theory and thus not finding him guilty on that count.

There was no objection to either the prosecutor's explanation or the charge at trial. The Appellate Division included this claim among those rejected as "either unpreserved for appellate review or without merit." This holding was neither contrary to nor an unreasonable application of Supreme Court authority. Accordingly, petitioner's claim is rejected.

18

## VI. Excessive Sentence

The Appellate Division rejected this claim on the merits. It is firmly established that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (citation omitted). Petitioner's sentence was less than the maximum under state law – he could have been sentenced to seven years' consecutive to the other charges on his assault conviction instead of five years' concurrent – even though, on my review of the record, there is no mitigating factor in sight.[3]

The Eighth Amendment forbids only extreme sentences which are "grossly disproportionate" to the crime of conviction. Lockyer v. Andrade, 538 U.S. 63, 72-73, 123 S.Ct. 1166, 1173 (2003); Harmelin v. Michigan, 501 U.S. 957, 995, 111 S.Ct. 2680, 2701 (1991). I see nothing disproportionate with regard to petitioner's sentence considering the record.

## VII. Ineffective Assistance of Counsel

Petitioner claims that his counsel failed to object enough and that he was prejudiced under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). Neither in this Court nor in the Appellate Division did his papers disclose that to which he would have liked counsel to object. If he is referring to the claims discussed above, which is not clear, none of them had any merit, so neither prong of Strickland has been met. If he is referring to something else, my review of the record does not disclose any prejudicial errors by trial counsel.

---

[3] Petitioner's excessiveness argument relies on his age (22), his lack of a "serious" criminal history, and the fact that the jury convicted him of depraved indifference to human life rather than intentional murder. The argument is specious considering the likelihood of recidivism for a 22 year old murderer; six prior convictions including one felony (albeit non-violent), the callousness petitioner displayed on his apprehension, and the complete lack of remorse reflected in the record.

The Appellate Division rejected the claim as among those that were either unpreserved or without merit. That decision is neither contrary to nor an unreasonable application of Supreme Court authority.

## CONCLUSION

The petition is denied. As the petitioner has not made a substantial showing of the denial of a federal right, a certificate of appealability will not issue. See 28 U.S.C. § 2253; Tankleff v. Senkowski, 135 F.3d 235, 241 (2d Cir. 1998). Additionally, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917 (1962).

**SO ORDERED.**

/Signed by Judge Brian M. Cogan/

U.S.D.J.

Dated: Brooklyn, New York
August 6, 2008